IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-HC-02248-M

| | | |
|---|---|---|
| MICHAEL ANTHONY SHERIDAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| STATE OF NORTH CAROLINA, | ) | |
| | ) | |
| Respondent. | ) | |

On December 17, 2021, Michael Anthony Sheridan ("petitioner"), a state inmate, filed *pro se* a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. Pet. [D.E. 1]. Petitioner subsequently moved to amend the petition. See [D.E. 4, 8]. On May 16, 2022, the court granted these motions to amend, denied discovery-related motions, and allowed the action to proceed. Order [D.E. 11]. On September 8, 2022, respondent moved to dismiss the petition on timeliness grounds and filed a memorandum in support. See Mot. [D.E. 23]; Resp't Mem. [D.E. 24]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 25]. Petitioner filed a memorandum in support of his petition [D.E. 26], a response in opposition to the motion to dismiss [D.E. 27], other memoranda in support [D.E. 28, 29], and further letters [D.E. 30, 31]. For the following reasons, the court denies the motion to dismiss.

Relevant Background:

Petitioner's instant petition collaterally attacks his March 24, 2017, Wake County convictions for sexual exploitation, statutory rape, and sexual offense in a parental role. See Pet. [D.E. 1] at 1; Am. Pet. [D.E. 4] at 1; see also N.C. Dep't of Pub. Safety, Offender Pub. Info.,

https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0366538&searc

hOffenderId=0366538&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1

(search by inmate number) (visited Apr. 13, 2023).

The background of petitioner's criminal case was summarized on direct appeal as follows:

> T.S. ("Tonya") met Defendant in March 2013, in the Raleigh neighborhood where they both lived. Tonya was fourteen years old and Defendant was forty-four. Defendant told Tonya about and introduced her to his daughter, who was around the same age. Tonya began "hanging out" with Defendant's daughter, and Defendant was "always" around.
>
> On 14 March 2013, Defendant asked Tonya if she wanted to "hang out" at his house the next day, while she waited for his daughter to get home. The next day, Defendant told Tonya his daughter was home, and she should come over.
>
> Once she entered his house, Defendant told Tonya they were alone. Defendant took Tonya into his bedroom, began kissing her, removed their clothes, and engaged in her first vaginal intercourse. Defendant and Tonya engaged in vaginal intercourse and fellatio "every day" thereafter, and within a week or two Tonya came to believe she was "in love" with Defendant.
>
> Tonya moved with her family to Hertford County in November 2013. Defendant continued engaging in sexual relations with Tonya after the move, when she returned to Raleigh with her mother to visit in the area. In June 2014, Tonya moved back to Raleigh and lived with Defendant. Defendant had told Tonya she could choose where she wanted to live after she turned sixteen years old. Tonya told her mother Defendant had offered her a job in Raleigh, and she was going to live with and work for him.
>
> Defendant and Tonya shared a bed when she moved in with him and immediately resumed their sexual relationship. Their near daily sexual activity occurred before and after Tonya's sixteenth birthday. Between 2013 and 2014, Tonya used Defendant's phone at his request to take four or five nude photographs of herself. Defendant purchased food and clothing for Tonya and gave her a bank card to use for expenses.
>
> On 27 October 2014, Defendant and Tonya argued. At Tonya's request, her grandmother dropped her off at her mother's boyfriend's house in Harnett County. Tonya's mother's boyfriend refused to allow Tonya to stay, and she returned to Defendant's house in a taxicab late that night.
>
> When she arrived, Tonya found Defendant naked in bed with another woman. Tonya requested Defendant to pay for her cab fare, but he refused. An argument

2

Case 5:21-hc-02248-M   Document 32   Filed 04/18/23   Page 2 of 8

ensued and the police were called. The cab driver retained all of Tonya's luggage and belongings for the unpaid fare. Tonya was arrested and taken to jail for failing to pay the cab fare.

Tonya was released from jail at approximately 3:00 a.m. on 28 October 2014 and walked back to Defendant's home from the jail. The other woman was still at the house. Defendant and Tonya argued, and the other woman was driven home by Defendant's housemate. Tonya and Defendant slept in the same bedroom, but upon waking continued to argue, mainly about access to a phone. Defendant had provided Tonya with a phone when she had moved in, but he had taken it away from her.

Tonya attempted to retrieve the phone while Defendant was in the shower, but Defendant allegedly began to physically assault her. Tonya grabbed a beer bottle and struck him on the head. Defendant escalated the assault, and when Tonya fell to the floor, she saw a knife and grabbed it. Defendant and Tonya grappled with the knife, but she regained control of it and stabbed Defendant. The assaults continued, and Defendant's mother called 911.

Officers arrived and Tonya was transported to the hospital and underwent a sexual assault examination. Tonya told police officers that Defendant had raped her that day and had been sexually active with her prior to that occurrence. Tonya was placed into foster care. Soon after, Tonya learned she was pregnant again and gave birth to a son. She had previously aborted an earlier pregnancy. Subsequent DNA testing confirmed to a confidence interval of 99% that Defendant was the father of the child.

Defendant was indicted for four counts of first-degree sexual exploitation of a minor, two counts of statutory rape, one count of sexual offense in a parental role, one count of indecent liberties with a minor, and of attaining habitual felon status. Defendant had retained counsel, but filed a *pro se* motion for a speedy trial on 14 April 2015, while being incarcerated in the Wake County Jail for approximately six months. Even though Defendant was represented by counsel, the trial court heard and denied the *pro se* motion.

Defendant's case was called for trial on 20 March 2017. The jury's verdict found Defendant guilty of the four counts of sexual exploitation, two counts of statutory rape, and one count of sexual offense in a parental role. The State dismissed the charges of indecent liberties and Defendant having attained habitual felon status. Defendant was sentenced to two consecutive sentences of 317-441 months, one consecutive sentence of 33-100 months, and four consecutive sentences of 96-176 months. He was also ordered to register as a sex offender and enroll in [Satellite Based Monitoring ("SBM")] for the remainder of his natural life.

> Defendant gave oral notice of appeal in open court, but did not enter written notice of appeal of the civil SBM order. Defendant has subsequently filed a petition for writ of certiorari to seek review of the civil SBM.

State v. Sheridan, 263 N.C. App. 697, 699–701, 824 S.E.2d 146, 149–50 (2019).

On appeal, petitioner argued: 1) the trial court should have dismissed the sexual offense in a parental role charge because the State failed to show that he was in a parental role; 2) the trial court erred in denying his speedy trial motion; 3) the trial court erred in denying his motion for a mistrial; and 4) he was deprived of effective assistance of counsel regarding the SBM order. Id. at 701, 824 S.E.2d at 150; Resp. Mem. Attach., Ex. 6, [D.E. 24-7] at 2–43 (Pet'r's' appellate br.).

While his direct appeal was pending, petitioner filed a § 2254 habeas petition in this court that was dismissed without prejudice for failure to exhaust state remedies. See Order [D.E. 24], Sheridan v. North Carolina, No. 5:17-HC-2069-BO (E.D.N.C. Nov. 7, 2018).

On February 5, 2019, the North Carolina Court of Appeals: rejected petitioner's first and third arguments; found the trial court failed to properly weigh the speedy trial claim; granted certiorari to review the SBM judgement; concluded petitioner's counsel was ineffective in failing to object as to the SBM; and remanded to the trial court to adjudicate the speedy trial issue and hold another SBM hearing. See Sheridan, 263 N.C. App. at 701–08, 824 S.E.2d at 150–54.

On February 17, 2020, following a new hearing on the SBM matter, the trial court's final order denied the State's motion to impose lifetime SBM but ordered a second reasonableness hearing following petitioner's theoretical release. Resp. Mem. Attach., Ex. 2, [D.E. 24-3] at 1–3.

On July 28, 2020, also pursuant to the North Carolina Court of Appeals' remand, the trial court denied petitioner's speedy trial motion. Resp. Mem. Attach., Ex. 3, [D.E. 24-4] at 1–10.

On August 3, 2020, petitioner filed through counsel a notice of appeal challenging the trial court's denial of his speedy trial motion. See Resp. Mem. Attach., Ex. 4, [D.E. 24-5] at 1–2.

On December 16, 2020, petitioner filed through counsel a notice of withdrawal as to this appeal. See Resp. Mem. Attach., Ex. 5, [D.E. 24-6] at 1–4.

Arguments:

In support of the motion to dismiss, respondent generally argues the instant § 2254 petition is untimely. See Resp't Mem. [D.E. 24] at 7–14.

In his response in opposition, petitioner states: the prosecutor fabricated legal documents, overcharged him, and admitted legal errors in an email to the "alleged victim [sic]"; the "alleged victim [sic]" recanted statements and said that her statements were coerced by the Raleigh Police Department; the prosecutor "altered DNA paternity test paperwork"; he has a brain injury due to being stabbed by the "alleged victim [sic]"; the petition should not be dismissed because it "has a lot of truth and merit"; the charges lack sufficient evidence; his speedy trial rights were violated; and "the state has no merit in why this case should be dismissed." Pet'r's' Resp. [D.E. 27] at 1.

In further response, petitioner writes: "there was prosecutorial misconduct"; the prosecutor, judge, and his trial attorney "denied [petitioner his] right to have [his] witnesses subpoenaed"; his speedy trial rights were violated; he didn't receive preliminary hearings; he has been incarcerated for eight years too long; he would like to have the "original 8 to 10 year plea bargain"; and he has a lot of medical problems that need to be addressed by a family doctor." Pet'r's' Mem. [D.E. 28].

In still further response, petitioner writes:

I contacted the Federal Court myself and I was told by a clerk that my time to file was not expired so I proceeded to file my motion at that time the state all they have now is a timeless [sic] defense because they know I was wrongfully convicted and that [the prosecutor] went above and beyond the law of Justice to get me convicted. Please don't punish me any further due to my lack of the law [sic]. I did ask the court for a court appointed attorney because of my brain damage I received from the alleged victim from stabbing me seven times. Three were to the back of my head. The state don't have any evidence suggesting my sentence shouldn't be overturned [sic]. That's why they are going with the timeless defense [sic]. All the

5

Case 5:21-hc-02248-M   Document 32   Filed 04/18/23   Page 5 of 8

paperwork and copies of all my charges the state filed with your office are trumped up and are bogus. Therefore [,] these charges should be overturned and dismissed.

Pet'r's' Mem. [D.E. 29].

In his subsequent letters, petitioner asserts that the "crime lab report" indicates a sexual assault kit was never tested, see [D.E. 30] at 1, there may have been tampering with the DNA paternity results, and that, although statutory rape is a class E felony with a sentence range from 20-41 months' incarceration, the trial judge sentenced petitioner "as a class B1 and gave [petitioner] 317-441 months x 2 [sic]," [D.E. 31] at 1–2.

## Discussion:

First, because some of petitioner's filings identify by name the victim of his crime of conviction, the court DIRECTS the clerk to seal the following docket entries: [D.E. 1-1, D.E. 26].

Next, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires an individual in custody pursuant to the judgment of a state court to file any application for a writ of habeas corpus within one year of the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1); see Frasch v. Peguese, 414 F.3d 518, 521 (4th Cir. 2005).

The court must determine when petitioner's judgment became final under § 2244(d)(1)(A). AEDPA's one-year limitation period is tolled during the time in which "a properly filed application

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Hernandez v. Caldwell, 225 F.3d 435, 438–39 (4th Cir. 2000). An application for post-conviction review is pending from initial filing in state court until final disposition in the highest state court. See Taylor v. Lee, 186 F.3d 557, 560–61 (4th Cir. 1999). The running of AEDPA's one-year limitation period resumes once the state's highest court resolves post-conviction proceedings. Harris v. Hutchinson, 209 F.3d 325, 327–28 (4th Cir. 2000).

As noted above: on remand from the North Carolina Court of Appeals, the trial court denied petitioner's speedy trial motion on July 28, 2020; on August 3, 2020, petitioner appealed this denial; and, on December 16, 2020, petitioner voluntarily withdrew this appeal. See Resp. Mem. Attach., Ex. 3, [D.E. 24-4] at 1–10; id. Ex. 4, [D.E. 24-5] at 1–2; id., Ex. 5, [D.E. 24-6] at 1–4.

Respondent argues that, because petitioner never perfected and then withdrew this August 3, 2020, appeal, the appeal itself was a nullity, the North Carolina Court of Appeals never obtained jurisdiction of the appeal, and the trial court was the last court that had jurisdiction over the case, such that petitioner's judgement became final on August 11, 2020, when the time to seek review of the trial court's speedy trial order expired. See Resp. Mem. [D.E. 24] at 8–13.

The court disagrees. The better argument is that AEDPA's one-year limitation period ran from the date petitioner withdrew his appeal on December 16, 2020. See, e.g., Miller v. Hooks, 749 F. App'x 154, 159–61 (4th Cir. 2018) (per curiam) (unpublished) (noting running of AEDAP's limitation period "is a matter of federal law," and reversing a district court's finding that a petitioner who failed to timely perfect his appeal lost his right to appeal "by operation of law"); Yow v. Hayes, No. 1:13-CV-283, 2013 WL 3353951, at *1 (M.D.N.C. July 3, 2013) (citing Letlow v. Sabourin, No. Civ. 01-0103(LBS), 2003 WL 21919430, at *2 (E.D.N.Y. Apr. 14, 2003) ("Direct review of [defendant's] conviction concluded when his appeal was withdrawn.")), appeal

7

dismissed, 543 F. App'x 309, 310 (4th Cir. 2013) (per curiam) (unpublished); Blakeman v. Solana, No. 5:15-HC-2096-D, 2015 WL 12916315, at *3 (E.D.N.C. Oct. 5, 2015) (finding petitioner's conviction final "no later than when he withdrew his appeal or perhaps 90 days thereafter when his time to seek a writ of certiorari from the Supreme Court of the United States expired"); Tart v. Hooks, No. 1:17CV260, 2017 WL 11712378, at *2 (M.D.N.C. Nov. 30, 2017) ("The withdrawal of Petitioner's appeal was the day on which the judgment became final and therefore triggered the onset of the one-year limitations deadline"); cf. Adair v. Tucker, No. 5:12-CV-00346-MP-GRJ, 2014 WL 2805227, at *2 (N.D. Fla. June 20, 2014) (noting courts "have reached different conclusions on whether petitioners who voluntarily dismiss their appeals are entitled to the 90–day period to petition for a writ of certiorari in the Supreme Court of the United States, or whether their convictions become final on the day their appeal is dismissed).

Thus, because respondent acknowledges that, pursuant to the "prison mailbox rule," petitioner filed this petition on December 8, 2021, see Resp. Mem. [D.E. 24] at 5 (citing Houston v. Lack, 487 U.S. 266, 276 (1988)), AEDPA's one-year limitation had not run at the time of filing.

## Conclusion:

For the reasons discussed above, the court: DIRECTS the clerk to SEAL the following docket entries [D.E. 1-1, D.E. 26]; DENIES respondent's motion to dismiss [D.E. 23]; and DIRECTS the clerk to continue management of the action.

SO ORDERED this 18th day of April, 2023.

RICHARD E. MYERS II
Chief United States District Judge