IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-HC-02248-M

MICHAEL ANTHONY SHERIDAN, )
)
          Petitioner, )
)
v. ) **ORDER**
)
STATE OF NORTH CAROLINA, )
)
          Respondent. )

This cause is before the court on respondent's pending motion for summary judgment. Mot. [D.E. 36]. For the following reasons, the court grants the motion.

Relevant Procedural History:

On December 17, 2021, Michael Anthony Sheridan ("petitioner"), a state inmate, filed *pro se* a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. Pet. [D.E. 1]. Petitioner subsequently moved to amend the petition. See [D.E. 4, 8]. On May 16, 2022, the court granted these motions to amend, denied discovery-related motions, and allowed the action to proceed. Order [D.E. 11]. On September 8, 2022, respondent moved to dismiss the petition on timeliness grounds. Mot. [D.E. 23]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified petitioner about the motion to dismiss, the response deadline, and the consequences of failing to respond. [D.E. 25]. Petitioner filed a memorandum in support of his petition [D.E. 26], a response in opposition to the motion to dismiss [D.E. 27], other memoranda in support [D.E. 28, 29], and further letters [D.E. 30, 31]. On April 18, 2023, the court denied the motion to dismiss. Order [D.E. 32]. On May 8, 2023, the court denied petitioner's motion to appoint counsel. Order [D.E. 34]. On May 31, 2023, respondent answered the petition,

Answer [D.E. 35], moved for summary judgment, Mot. [D.E. 36], and filed a statement of material facts [D.E. 37], and a memorandum in support [D.E. 38]. On June 1, 2023, respondent filed an appendix [D.E. 40]. Pursuant to Roseboro, 528 F.2d at 310, the court notified petitioner about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 39]. On July 21, 2023, petitioner filed a response. [D.E. 44].

## Background:

Petitioner's instant petition collaterally attacks his March 24, 2017, Wake County convictions for sexual exploitation, statutory rape, and sexual offense in a parental role. See Pet. [D.E. 1] at 1; Am. Pet. [D.E. 4] at 1; see also N.C. Dep't of Adult Correction, Offender Pub. Info., https://webapps.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0366538&searchOffenderId=0366538&searchDOBRange=0&listurl=pagelistoffendersearchresults&listpage=1 (search by inmate number) (last visited Nov. 14, 2023).

The background of petitioner's criminal case was summarized on direct appeal as follows:

T.S. ("Tonya") met Defendant in March 2013, in the Raleigh neighborhood where they both lived. Tonya was fourteen years old and Defendant was forty-four. Defendant told Tonya about and introduced her to his daughter, who was around the same age. Tonya began "hanging out" with Defendant's daughter, and Defendant was "always" around.

On 14 March 2013, Defendant asked Tonya if she wanted to "hang out" at his house the next day, while she waited for his daughter to get home. The next day, Defendant told Tonya his daughter was home, and she should come over.

Once she entered his house, Defendant told Tonya they were alone. Defendant took Tonya into his bedroom, began kissing her, removed their clothes, and engaged in her first vaginal intercourse. Defendant and Tonya engaged in vaginal intercourse and fellatio "every day" thereafter, and within a week or two Tonya came to believe she was "in love" with Defendant.

Tonya moved with her family to Hertford County in November 2013. Defendant continued engaging in sexual relations with Tonya after the move, when she returned to Raleigh with her mother to visit in the area. In June 2014, Tonya moved back to Raleigh and lived with Defendant. Defendant had told Tonya she could

2

choose where she wanted to live after she turned sixteen years old. Tonya told her mother Defendant had offered her a job in Raleigh, and she was going to live with and work for him.

Defendant and Tonya shared a bed when she moved in with him and immediately resumed their sexual relationship. Their near daily sexual activity occurred before and after Tonya's sixteenth birthday. Between 2013 and 2014, Tonya used Defendant's phone at his request to take four or five nude photographs of herself. Defendant purchased food and clothing for Tonya and gave her a bank card to use for expenses.

On 27 October 2014, Defendant and Tonya argued. At Tonya's request, her grandmother dropped her off at her mother's boyfriend's house in Harnett County. Tonya's mother's boyfriend refused to allow Tonya to stay, and she returned to Defendant's house in a taxicab late that night.

When she arrived, Tonya found Defendant naked in bed with another woman. Tonya requested Defendant to pay for her cab fare, but he refused. An argument ensued and the police were called. The cab driver retained all of Tonya's luggage and belongings for the unpaid fare. Tonya was arrested and taken to jail for failing to pay the cab fare.

Tonya was released from jail at approximately 3:00 a.m. on 28 October 2014 and walked back to Defendant's home from the jail. The other woman was still at the house. Defendant and Tonya argued, and the other woman was driven home by Defendant's housemate. Tonya and Defendant slept in the same bedroom, but upon waking continued to argue, mainly about access to a phone. Defendant had provided Tonya with a phone when she had moved in, but he had taken it away from her.

Tonya attempted to retrieve the phone while Defendant was in the shower, but Defendant allegedly began to physically assault her. Tonya grabbed a beer bottle and struck him on the head. Defendant escalated the assault, and when Tonya fell to the floor, she saw a knife and grabbed it. Defendant and Tonya grappled with the knife, but she regained control of it and stabbed Defendant. The assaults continued, and Defendant's mother called 911.

Officers arrived and Tonya was transported to the hospital and underwent a sexual assault examination. Tonya told police officers that Defendant had raped her that day and had been sexually active with her prior to that occurrence. Tonya was placed into foster care. Soon after, Tonya learned she was pregnant again and gave birth to a son. She had previously aborted an earlier pregnancy. Subsequent DNA testing confirmed to a confidence interval of 99% that Defendant was the father of the child.

> Defendant was indicted for four counts of first-degree sexual exploitation of a minor, two counts of statutory rape, one count of sexual offense in a parental role, one count of indecent liberties with a minor, and of attaining habitual felon status. Defendant had retained counsel, but filed a *pro se* motion for a speedy trial on 14 April 2015, while being incarcerated in the Wake County Jail for approximately six months. Even though Defendant was represented by counsel, the trial court heard and denied the *pro se* motion.
>
> Defendant's case was called for trial on 20 March 2017. The jury's verdict found Defendant guilty of the four counts of sexual exploitation, two counts of statutory rape, and one count of sexual offense in a parental role. The State dismissed the charges of indecent liberties and Defendant having attained habitual felon status. Defendant was sentenced to two consecutive sentences of 317-441 months, one consecutive sentence of 33-100 months, and four consecutive sentences of 96-176 months. He was also ordered to register as a sex offender and enroll in [Satellite Based Monitoring ("SBM")] for the remainder of his natural life.
>
> Defendant gave oral notice of appeal in open court, but did not enter written notice of appeal of the civil SBM order. Defendant has subsequently filed a petition for writ of certiorari to seek review of the civil SBM.

State v. Sheridan, 263 N.C. App. 697, 699–701, 824 S.E.2d 146, 149–50 (2019).

On appeal, petitioner argued: 1) the trial court erred when it denied a motion to dismiss the sexual offense in a parental role charge because the State failed to show that he had a parent-child relationship with the complainant; 2) a mistrial should have been declared when an expert in child abuse testified the complainant was a "neglected" juvenile because she was allowed to live with petitioner, a man with a "history of criminality"; 3) the trial court erred by summarily denying his speedy trial motion; and 4) he received ineffective assistance of counsel when counsel stated the SBM hearing was "pointless," asked not to be heard, failed to challenge the state's position in the hearing, and did not advocate for petitioner. Id. at 701, 824 S.E.2d at 150; Resp't Mem. Attach., Ex. 6, [D.E. 24-7] at 2–43 (Pet'r's' appellate br.).

As his direct appeal was pending, petitioner filed a § 2254 habeas petition in this court that was dismissed without prejudice for failure to exhaust state remedies. See Sheridan v. North Carolina, No. 5:17-HC-2069-BO (E.D.N.C. Nov. 7, 2018), Order [D.E. 24].

4

On February 5, 2019, the North Carolina Court of Appeals: found the trial court failed to properly weigh the speedy trial claim; granted certiorari to review the SBM judgement and found trial counsel ineffective in failing to object to the SBM; remanded to the trial court to adjudicate the speedy trial issue and hold another SBM hearing; but found no error as to petitioner's other claims. See Sheridan, 263 N.C. App. at 701–08, 824 S.E.2d at 150–54.

On May 1, 2019, petitioner filed *pro se* a self-styled "Motion to Vacate Conviction." Resp't App., Ex. 7 [D.E. 40-1] at 1–6. On May 9, 2019, Wake County Superior Court Judge Paul Ridgway issued an order as to this motion. Id., Ex. 8 [D.E. 40-2] at 1–3 (finding petitioner could not file motions *pro se* as he was represented by counsel, noting this motion and order will be filed in petitioner's court file, and stating "[n]o other action will be taken by this office at this time").

On February 17, 2020, following a new hearing on the SBM matter, the trial court's final order denied the State's motion to impose lifetime SBM but ordered a second reasonableness hearing following petitioner's theoretical release. Resp't Mem. Attach., Ex. 2, [D.E. 24-3] at 1–3.

On July 28, 2020, pursuant to the North Carolina Court of Appeals remand, Superior Court Judge Ridgway denied petitioner's speedy trial motion. Id., Ex. 3, [D.E. 24-4] at 1–10.

On August 3, 2020, petitioner filed through counsel a notice of appeal challenging the trial court's denial of his speedy trial motion. See id., Ex. 4, [D.E. 24-5] at 1–2.

On December 16, 2020, petitioner filed through counsel a notice of withdrawal as to this appeal of the trial court's denial of his speedy trial motion. See id., Ex. 5, [D.E. 24-6] at 1–4.

Arguments:

As his grounds for relief, petitioner asserts that: 1) he was wrongly denied a preliminary hearing; 2) his speedy trial rights were denied; 3) the prosecutor, Melanie Shekita ("Shekita"), "knowingly coerced State witnesses to give false testimony"; 4) the state refused to allow him to

5

subpoena defense witnesses; and 5) that he was "overcharged" to try to force him to accept a plea deal. See Pet. [D.E. 1] at 5–9; see also Pet'r's' Mot. [D.E. 4]; Pet'r's' Mot. [D.E. 8].

Respondent generally argues that petitioner's "false testimony" claim is unexhausted, and his other claims are procedurally defaulted and meritless. See Resp't Mem. [D.E. 38] at 7–19.

In response, petitioner argues summary judgment should be denied because "the material facts will prove I'm innocent of all charges." Pet'r's' Resp. [D.E. 44] at 2. Petitioner contends a nurse testified that T.S. "was not pregnant the night in question." Id. Petitioner reiterates that the North Carolina Court of Appeals was unanimous in their speedy trial determination, and he was denied his right to subpoena witnesses to testify on his behalf at trial. Id. at 2–3. Petitioner notes he had different attorneys during the case and contends that Shekita "maliciously and vindictively prosecuted [him] because [he] refused to sign [an] 8–10-year plea bargain." Id. at 3. Petitioner argues "the alleged victim sent [his appellate] attorney her recanted statements saying that [Shekita] coerced her and [petitioner] didn't do the alleged crime." Id. Petitioner contends Shekita admitted in an e-mail to the victim "that she made errors on purpose to get [petitioner] prosecuted [sic]." Id. Petitioner asserts that Shekita was texting the stenographer during the trial, "telling her what to leave out of the transcript," and, "if [he] can get a search warrant of there [sic] phone and laptop it would be proven [sic]." Id. Petitioner states he was "denied all access to a private investigator" who "would have broken the case wide open." Id. Petitioner also asserts that Shekita "was not in the grand jury room to get [petitioner] indicted for the rape and substitute parent charge" and "another prosecutor sign [sic] the fake indictment and then put [Shekita's] name on it [sic]." Id. at 4. Petitioner contends that a rape kit sample was never tested, and that "the DNA paternity test paper was altered and changed [sic]." Id. Petitioner asserts that there was never enough evidence to charge him with a crime and that all the state's evidence was fabricated. Id.

6

<u>Legal Standard</u>:

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, <u>Anderson</u>, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (alteration and internal quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. <u>Anderson</u>, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).

Absent a valid excuse, a state prisoner must exhaust all available state-court remedies before seeking federal habeas relief. <u>See</u> 28 U.S.C. § 2254(b); <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006) ("In habeas, the sanction for failing to exhaust properly (preclusion of review in federal court) is given the separate name of procedural default"). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, petitioner must "fairly present" his claims to the state court. <u>See</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971); <u>Baker v. Corcoran</u>, 220 F.3d 276, 288 (4th Cir. 2000). A claim is "fairly presented" if petitioner presents the "substance of his federal

7

habeas corpus claim" to the state court, including "both the operative facts and the controlling legal principles." Pethtel v. Ballard, 617 F.3d 299, 306 (4th Cir. 2010) (quotations and citation omitted).

In North Carolina, a petitioner may satisfy this exhaustion requirement by appealing the conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a motion for appropriate relief ("MAR") and then petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-27, 7A-31, 15A-1415, 15A-1422. "The exhaustion requirement is not satisfied if petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir.) (citation omitted), cert. denied sub nom. Breard v. Greene, 523 U.S. 371 (1998). The petitioner bears the burden of proving a claim was exhausted. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994), cert. denied, 513 U.S. 1047 (1994).

The procedural default doctrine, a corollary to the habeas exhaustion requirement under § 2254(b), generally precludes a federal court from reviewing the merits of a claim the state court found to be procedurally barred based on independent and adequate state grounds. See Martinez v. Ryan, 566 U.S. 1, 10 (2012); Dretke v. Haley, 541 U.S. 386, 392 (2004); Coleman v. Thompson, 501 U.S. 722, 747–48 (1991); Breard, 134 F.3d at 619 ("A procedural default occurs when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" (quotation omitted).

A state rule is "adequate" if it is firmly established and consistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000), and "independent" if the rule does not depend upon a federal constitutional ruling, see Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

8

For the court to review a procedurally defaulted claim, petitioner must demonstrate either cause and prejudice resulting from the alleged violation of federal law, or that the failure to consider the claim will result in a fundamental miscarriage of justice. Baker, 220 F.3d at 288; see Plymail v. Mirandy, 8 F.4th 308, 316 (4th Cir. 2021). A petitioner shows cause by establishing that some external force prevented him from complying with the state procedural rule. Coleman, 501 U.S. at 753. A petitioner shows prejudice by showing he was actually prejudiced as a result of the alleged violation of federal law. See United States v. Frady, 456 U.S. 152, 167–68 (1982).

Section 15A-1419(a)(3) of the North Carolina General Statutes provides that an MAR shall be denied when a defendant is in an adequate position to have raised the claim on appeal but did not do so. Section 15A-1419(a)(3) is an independent and adequate state procedural bar. See Lawrence v. Branker, 517 F.3d 700, 714–15 (4th Cir. 2008); Rose v. Lee, 252 F.3d 676, 683–84 (4th Cir. 2001); Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). A federal habeas court may not review the merits of a procedurally barred constitutional claim absent cause and prejudice or a miscarriage of justice. See Brown v. Lee, 319 F.3d 162, 169 (4th Cir. 2003).

Discussion:

As to his first ground for relief – that he was wrongly denied a preliminary hearing – petitioner asserts he "contacted the Supreme Court to address this issue . . . and [his] notions were denied before they were even heard in state courts." Pet. [D.E. 1] at 5. Petitioner acknowledges that he did not raise this issue on appeal, but he ascribes this failure to his trial attorney "purposely [leaving] preliminary hearing off the record so [petitioner] couldn't challenge it on appeal." Id. Petitioner also acknowledges that he did not raise this issue in postconviction motions. Id.

Respondent argues that petitioner cannot show either cause or prejudice for this procedural default because: there is no record of him "contacting the Supreme Court" as to a preliminary

9

hearing; a "preliminary hearing," a.k.a. a probable-cause hearing, occurs before a district court judge and is not required to be on the record; petitioner was represented by different counsel on appeal and could have raised a claim of ineffective assistance of trial counsel as to a preliminary hearing, but he did not; and he fails to show a federal constitutional right to a preliminary hearing. Resp't Mem. [D.E. 38] at 9–11 (citing, *inter alia*, N.C. Gen. Stat. §§ 15A-606(a), (d), 15A-1241).

Petitioner failed to meet § 2254's exhaustion requirement for his first ground for relief, see 28 U.S.C. § 2254(b)(1), and, because he failed to raise this first ground for relief on direct appeal, despite being able to do so, the claim is procedurally defaulted, N.C. Gen. Stat. § 15A-1419(a)(3); Lawrence, 517 F.3d at 714–15; McCarver v. Lee, 221 F.3d 583, 588–89 (4th Cir. 2000) (finding that N.C. Gen. Stat. § 15A-1419(a)(3) is an independent and adequate state procedural bar that is consistently and regularly applied even in "the special case" of ineffective assistance of counsel claims; Breard, 134 F.3d at 619. Thus, because petitioner has shown neither cause and prejudice for this procedural default, nor a fundamental miscarriage of justice, cf. Coleman, 501 U.S. at 750, the court's consideration of this claim is barred, Brown, 319 F.3d at 169; Baker, 220 F.3d at 288; see also Wainwright v. Sykes, 433 U.S. 72, 86–89 (1977) (discussing contemporaneous objection rule and noting that failure to preserve objections barred federal habeas review); Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003) (noting, where petitioner failed to preserve objection for direct appeal, a federal habeas court is procedurally barred from considering the claim unless petitioner shows "cause and prejudice"), cert. denied, 540 U.S. 851 (2003); McCarver, 221 F.3d at 592 (finding that "the lack of non-record evidence available to appellate counsel" does not constitute "cause" to excuse a procedural default); see N.C. R. App. P. 10(b)(1) (requiring error to be challenged at trial to be preserved for appeal).

The court now turns to petitioner's second ground for relief – that his speedy trial rights were denied. Petitioner notes that he raised the issue on appeal, the North Carolina Court of Appeals remanded the case for an evidentiary hearing, and that, after his evidentiary hearing was denied, he appealed a second time but subsequently withdrew the appeal. Pet. [D.E. 1] at 6–8.

Succinctly stated, petitioner fails to show that he met § 2254's exhaustion requirement for his second ground for relief and the court discerns no valid excuse for this failure to exhaust. See 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Mallory, 27 F.3d at 994. Accordingly, this claim is dismissed without prejudice to allow petitioner to exhaust his state remedies.

The court now turns to petitioner's third ground for relief – that the prosecutor "knowingly coerced State witnesses to give false testimony." Pet. [D.E. 1] at 8. Petitioner asserts "the alleged victim said her testimony was coerced" and now states they had no sexual relations before she was 16 years old, and petitioner did not know about the nude photos found on his office cell phone. Id. Petitioner seeks to rely upon the victim's "recantation letter." See Pet. Attach. [D.E. 1-1] at 23–25; see also Resp't App., Ex. 9 [D.E. 40-1] at 1–3. Petitioner acknowledges he did not raise this claim on appeal. Pet. [D.E. 1] at 8; see Resp't Mem. Attach., Ex. 6, [D.E. 24-7] at 2–43 (Pet'r's' appellate br.). Petitioner instead argues that he raised this claim in a "Motion to Vacate Sentence [sic]" in "Wake County Supreme Court [sic]." See Pet. [D.E. 1] at 9 (presumably referencing his May 1, 2019, *pro se* "Motion to Vacate Conviction" in Wake County Superior Court, Resp't App., Ex. 7 [D.E. 40-1] at 1–6). As noted above, however, this *pro se* motion was not adjudicated because petitioner then was represented by counsel. See Resp't App., Ex. 8 [D.E. 40-1] at 1–3.

Succinctly stated, North Carolina courts have not had "one full opportunity" to review his third ground for relief because petitioner failed to raise this claim on direct appeal or in an MAR properly filed in the sentencing court. Thus, petitioner failed to exhaust state-court remedies as to

11

this claim, and the court discerns no valid excuse for this failure. See 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Mallory, 27 F.3d at 994. Accordingly, this claim is dismissed without prejudice to allow petitioner to exhaust his state remedies.

The court now turns to petitioner's fourth ground for relief – that the state refused to allow him to subpoena defense witnesses. Petitioner states that he asked the trial judge why he was "not allowed to have people testify on [his] behalf," and that both the judge and his trial counsel said petitioner "didn't need any witnesses." Pet. [D.E. 1] at 10. Petitioner acknowledges that he did not directly appeal this claim or raise it in post-conviction motions, but he contends "it was deliberately left off the record so [petitioner] couldn't challenge it." Id.

Petitioner failed to meet § 2254's exhaustion requirement for his fourth ground for relief. 28 U.S.C. § 2254(b)(1); O'Sullivan, 526 U.S. at 845. Further, because petitioner failed to raise this issue on direct appeal, despite being able to do so, this claim also is procedurally defaulted. N.C. Gen. Stat. § 15A-1419(a)(3); Lawrence, 517 F.3d at 714–15; McCarver, 221 F.3d at 588–89; Breard, 134 F.3d at 619. Petitioner has not shown cause for this default, Daniels, 316 F.3d at 487; McCarver, 221 F.3d at 592, and, because he does not divulge to what these purportedly blocked witnesses would have testified, petitioner also has not shown actual prejudice or a fundamental miscarriage of justice, cf. Coleman, 501 U.S. at 750. Accordingly, the court's consideration of this claim is barred. See Brown, 319 F.3d at 169; Baker, 220 F.3d at 288.

The court now turns to petitioner's fifth ground for relief – that he was "overcharged" to try to force him to accept a plea deal. Mot. [D.E. 4] at 1. Petitioner argues that the four counts of sexual exploitation of a minor and two counts of rape "have no merit" because of the "recanted statement of the allege victim." Id. (referencing Pet. Attach. [D.E. 1-1] at 23–25).

12

Succinctly stated, North Carolina courts have not had "one full opportunity" to review his fifth ground for relief because petitioner failed to raise this claim on direct appeal or in an MAR properly filed in the sentencing court. Thus, petitioner failed to exhaust state-court remedies as to this claim, and the court discerns no valid excuse for this failure. See 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Mallory, 27 F.3d at 994. Accordingly, this claim is dismissed without prejudice to allow petitioner to exhaust his state remedies.

Finally, after reviewing the habeas petition under the applicable standard, the court determines that reasonable jurists would not find the court's treatment of any of these claims debatable or wrong, and none of the issues are adequate to deserve encouragement to proceed further. Accordingly, the court denies a Certificate of Appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

### Conclusion:

For the reasons discussed above, the court: GRANTS respondent's motion for summary judgment [D.E. 36]; DISMISSES WITHOUT PREJUDICE the petition; DENIES a Certificate of Appealability; and DIRECTS the clerk to close the case.

SO ORDERED this 17th day of November, 2023.

*Richard E. Myers II*

RICHARD E. MYERS II
Chief United States District Judge